(23 Misc. Rep. 434.)

## In re CORNELIUS' WILL.

### (Surrogate's Court, Ulster County.   April 5, 1898.)

1. WILLS—MENTAL CAPACITY—EVIDENCE.

> At the time he made his will, testator was suffering from tubercular meningitis.   His physician testified that the disease affected testator's mind, but that at times his mind was clear.   Two expert witnesses testified in answer to hypothetical questions that testator had sufficient mental capacity at the time the will was made.   Testator had long lucid intervals.   The subscribing witnesses testified that testator was rational when he made the will, which was uncontradicted.   The will bore evidence of being the work of a rational person.   *Held* not sufficient to show mental incapacity.

2. SAME—BEQUESTS TO RELIGIOUS SOCIETIES.

> Laws 1848, c. 319, § 6, providing that a bequest to a corporation existing thereunder shall be invalid if not made at least two months before the death of a testator, will not be invoked against the probate of a will bequeathing property to a corporation which is not shown to have been incorporated under such law, although it bears a .name characteristic of such corporation.

Petition for the probate of the last will of Alonzo G. Cornelius, deceased.   Contest by Egbert I. Cornelius and by Adam Frank, special guardian for infant devisee.   Decree admitting the will to probate.

George G. Keeler (John J. Linson, of counsel), for petitioner and legatees Martha Masten and Emory Teller.

Adam Frank, special guardian of Franklyn G. Cornelius and Egbert I. Cornelius (William D. Brinnier, of counsel).

BETTS, S.   Alonzo G. Cornelius, died in this county on the 3d day of March, 1897, having previously made a paper writing bearing date January 7, 1897, which is offered here for probate as his last will and testament.   He left three children,—Carrie Berbert, a daughter; Egbert I. and Franklyn H. Cornelius, sons, the latter of whom is a minor; Egbert I. arriving at the age of 21 during the pendency of this contest.   On behalf of Egbert I. Cornelius, objections were filed to the probate of this will, and subsequently Mr. Frank, as special guardian, joined in those objections.   The testimony has been directed towards showing that the deceased, at the time the will was executed, was mentally incompetent to make a will.   There has been no proof as to undue influence.   The deceased resided at Ellenville, and up to a short time before his death he had conducted a grocery store there.   He was afflicted with consumption.   He had been to Spring Glen, a short distance from Ellenville, twice in the fall and early winter of 1896, for relief.   He returned to Ellenville the last time during the latter part of December, 1896.   Shortly thereafter he sent for James B. Keeler, a reputable lawyer at Ellenville, who had been his attorney for some time, and asked him to draw a new will for him.   Mr. Keeler a few months before had prepared a will, which deceased executed.   With this will as a guide, Mr. Cornelius directed Mr. Keeler as to the way in which he desired his will drawn.   Some legacies in that will were omitted, and in others the amounts were changed.   The changes were few.   Mr.

Keeler prepared the will in accordance with the ·directions of Mr.
Cornelius at his own office, and took the paper to Mr. Cornelius. Mr.
Keeler read this paper aloud, and Mr. Cornelius read it himself, say-
ing the will was right. Daniel E. Hornbeck, a neighbor of Mr. Cor-
nelius, was sent for at Mr. Cornelius' suggestion as a witness. The
will was then executed according to the formalities of the statute.
Mr. Cornelius continued to grow worse, and on the 3d of March he
died. His disease was defined to be tubercular meningitis, or in-
flammation of the covering of the brain. His attending physician,
Dr. Eastgate, testified that in his opinion the decedent had the in-
sanity of consumption, and was irrational. He testified that in-
sanity of consumption is a disease that affects the brain, destroying
the integrity of the mind, and is progressive. He could not be
positive when this commenced, but thought it was some time in
December, 1896. He said that at times the mind of the deceased
would appear clear, and that in October, 1896, he first noticed his
being a little queer. Two expert physicians were called, and they
testified from a hypothetical question that they considered that Mr.
Cornelius had sufficient mental capacity on January 7, 1897, to make
a will. It was undeniably established that at times during his last
illness the deceased was the subject of delirium, which increased as
he neared his end. The testimony substantially of all the witnesses,
however, was that he had long lucid intervals between these attacks.
The question, then, for decision is, was he rational, and did he have
a lucid interval at the time of making the will offered for probate?·
Both subscribing witnesses say he was rational on that day, and
there is no testimony that he was not. These witnesses knew him
well; Mr. Hornbeck being a near neighbor of his, also a merchant,
and acquainted with Mr. Cornelius for many years. The deceased
wrote something on a paper, a day or so before the date of the will,
which is certainly unintelligible, and at different times shortly be-
fore and shortly afterwards, and from that time until his death he
did numerous strange things, which would indicate that he was at
such times suffering from delirium as a result of the disease which
was slowly exhausting him. Many witnesses were produced, some
of whom thought him rational, and some not. However, he did
some business, shortly before making his will, with different parties.
After making the will, he gave a deed of real estate upon which his
residence and grocery were situated to the members of his family
now contesting his will, and took back a bond and mortgage from
them for a part of the purchase money for such conveyance. He also·
subsequently sold another piece of real estate, and gave a deed there-
for. Subsequent to the date of the will he also gave a mortgage to
secure an accommodation indorser for his note. No question as to
his rationality at these times, or to his ability to do these acts, was
raised, so far as is shown, either by those with whom he dealt or by
his children now contesting. It was held by the court of appeals
·in a somewhat similar case—Van Guysling v. Van Kuren, 35 N. Y.
70—that "the testator should be capable of comprehending the condi-
tion of his property, and his relations to the persons who are or might
have been the objects of his bounty. He should be able to collect in

his mind, without prompting, the elements of his business to be transacted, and hold them there until their relations to each other can be perceived, and a rational judgment in respect thereto be formed." In Re Davis' Will (Sup.) 36 N. Y. Supp. 344, the testator was upward of 70 years of age, and had been sick with heart disease for about a month prior to the execution of his will. A good part of the time he was unable to lie down, or take sufficient nourishment, and at times he was flighty and lightheaded. That will was executed December 7th. One witness testified that the testator was irrational the day after its execution; another witness saw him three times between the 8th and 23d of December, when he died, and at each of such times he was irrational. Another witness saw him after December 13th, and he was irrational. The lawyer who drew the will testified that he called on him on the afternoon of December 7th; that he was then irrational, and he would not allow him to execute the will. The court held:

"The irrational conversations which were testified to by the contestants' witnesses did not prove that the testator was insane. They were manifestations of the progress of the disease from which he suffered, and indicated a weak mind, as the result of suffering from lack of rest and proper nourishment. These periods of irrational action and lack of sound mental control were temporary, and when they had passed the testator was able to attend to business."

The surrogate admitted the will to probate, and the general term affirmed the surrogate's decree.

In Cheney v. Price (Sup.) 37 N. Y. Supp. 117, the will was executed February 1st and the testator died April 20th. The surrogate admitted the will to probate over the objections of certain of the heirs at law. Later this action was brought in the supreme court to determine whether that writing was or was not the last will of the testator. It appeared that the deceased was about 68 years of age, and a short time before the 15th day of December had a fit of apoplexy, which finally resulted in partial paralysis. The court says:

"Nearly all the witnesses, including the doctor in attendance during his sickness, advanced the opinion, based upon the circumstances attending interviews had with the deceased and his manifestations, that his conduct, acts, and sayings impressed them as irrational. The doctor in attendance advanced the general opinion, from observance made at various times during his attendance upon the testator, that he was a person of unsound mind, and was incompetent to transact any business requiring consideration and judgment. Upon the established existence of the facts narrated, the plaintiff contends that the paper writing produced is not the will of the deceased, for the reason that at the time he executed it he was not of sound and disposing mind and memory. The material inquiry is not the mental condition of the deceased on any of the days succeeding his affliction, except for the purpose of determining what his condition was on the 1st day of February, 1892, when he executed the instrument produced as his last will and testament; so that, if the evidence fairly discloses that, notwithstanding he had undergone this marked mental and physical change as described by the witnesses, at the time of the execution of the paper writing the deceased had sufficient force and integrity of mind to deliberate upon the subject of the disposition of his property, having regard to its nature and amount, the relatives who might or should be the objects of his bounty, and form a rational judgment thereon without prompting, then the question directed by the statute to be inquired into should be answered in the affirmative. It is not essential to the validity of his act that he be possessed of the vigor and

resolution of mind and body that he possessed in prime of life, but simply that he had sufficient memory and judgment upon the occasion of making the instrument to make it his deliberate and intelligent act."

The will was sustained by the supreme court, and the judgment was affirmed by the general term of that court.

The papers filed here show .that the value of the estate left by the deceased, Mr. Cornelius, was about the sum of $4,000. With the exception of a few small legacies, his entire property is left to his three children. The will itself seems to afford some evidence of being the work of a rational man, understanding his position, the members of his family, and the extent of his property.

In addition to the mental incapacity of the deceased ·to make a will, objections were also made to certain small bequests as follows: To the Wawarsing Soldiers' Monument Association, $50; to the Methodist Episcopal Church of Ellenville, $25; to the Reformed Church of Ellenville, $15; to the Lutheran Church of Ellenville, $10; to the trustees of the Ellenville Public Library, $15; to the Women's Christian Temperance Union of Ellenville, $20. These objections were made for the reason that these bequests were made within two months before the death of the decedent. These objections were taken under chapter 319, § 6, Laws 1848. That section provides:

"Any corporation formed under this act, shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of ten thousand dollars; provided, no person leaving a wife or child or parent, shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator."

There is no evidence before me to show that any of these corporations were formed under this statute. So far, at least, as the probate is concerned this contention is not sustained. After a painstaking examination of nearly 300 pages of testimony taken in this case, I am convinced that on January 7, 1897, at the time this will was executed, the deceased was of sound and disposing mind, and was not under any restraint; and a decree may be handed up admitting his will to probate.